SYBIL GOLDMAN *v.* JOSHUA H. GOLDMAN ET AL.

SUPERIOR COURT     NEW LONDON COUNTY     FILE NO. 23319

Memorandum filed April 30, 1957.

*Suisman, Shapiro & Wool,* of New London, for the plaintiff.

*Halloran, Sage, Phelon & Hagarty,* of Hartford, for the named defendant.

*Schofield, Fay & Courtney,* of Hartford, and *Abraham A. Lubchansky,* of New London, for the defendants Edward B. Brayton and Arlington Transportation Co.

TROLAND, J. This action arose out of a collision between a sedan driven by Joshua H. Goldman and a tractor-trailer truck driven by Edward B. Brayton, in a blinding snowstorm at about 11 p.m. on January 21, 1953. The verdict was for plaintiff, a passenger in the Goldman automobile, to recover $55,000 damages against the defendant Joshua H. Goldman only.

On all the evidence the jury were warranted in concluding that the defendant Joshua H. Goldman was negligent in driving his automobile on the left-hand side of the road at the time and place of meet-

ing the oncoming trailer truck, and that the driver of the trailer truck was not guilty of negligence and could not then and there in the exercise of reasonable care have taken any action which would have been effective to prevent the collision.

The plaintiff, Mrs. Goldman, was a passenger in the automobile driven by her husband, and she received the serious, permanent, disabling injuries hereafter described. Mrs. Goldman was forty-five years of age at the time of the accident. She was a graduate of Hunter College in the class of 1928. She was married to Joshua H. Goldman, a mechanical engineer, in 1935. At the time of the accident Mr. and Mrs. Goldman were living together in Hadlyme, Connecticut.

The jury could have found that Mrs. Goldman was thrown with violence from her car to the road by the force of the impact; that she was rendered unconscious and that she had brief periods of semiconsciousness as she lay in the road. Mrs. Goldman was removed to the hospital. At the hospital when first observed by the surgeon, she was conscious, in pain, was bleeding from the mouth, her left upper teeth were shifted in relation to her other teeth, she had marked deformity of her right wrist, left leg and right leg, and the left side of her face. She required sedation for pain and blood transfusions for several days as supportive treatment. X-rays revealed a severe fracture and dislocation of the right wrist, a comminuted fracture of the left thigh bone just below the hip, and a comminuted fracture of the right thigh bone in its mid-position. The fractures were the type that could only be treated satisfactorily by open reduction by operative methods and putting in internal fixation in the form of plates and screws. Because the plaintiff was in shock on admission, and because the injury to her face made it difficult to administer an anesthetic, and because she

had lost considerable blood, the operations were delayed a week to permit an improvement in her condition. The details of operation are omitted here, but the procedures required five and three-fourths hours. Into the right leg an intramedullary pin about sixteen inches long was introduced. The left leg required a pin extended into the hip three and a half to four inches long and a plate down the shaft of the bone six or seven inches long. The wrist fracture also required open reduction and the use of two very small segments of a Kirschner wire.

The plaintiff suffered much. She required several readmissions to the hospital and her period of convalescence at home was long, difficult and attended by pain, loss of sleep, and seriously circumscribed activity. Owing to the injuries, and during first hospitalization, Mrs. Goldman required treatment from an urologist because of temporary paralysis of the bladder, including catheterization and washing out of the bladder for nine days. The injury to the facial bones included a fracture of the lower rim of the left orbit, with downward displacement of fragments. This required the attention of an eye specialist. Mrs. Goldman had difficulty in focusing and has a permanent disability of vision. The serious permanent injuries include a flattening or an indentation in the left cheek below the eye. Her right wrist has a permanent limitation of motion, flexion and extension limited, fingers a bit stiffened, weakness of grasp, an approximate loss of strength and of motion of 25 per cent. Plaintiff's left hip has a permanent limitation of motion and of rotation of from 15 per cent to 20 per cent. She has on her left leg two permanent scars which are six to seven inches long. Plaintiff's right leg has a turning deformity. It is externally rotated from forty-five to sixty degrees, so that as she walks along, her right foot turns outward and she has a decided limp. She has limita-

tion of rotation at the hip. The permanent disability in this leg is 40 per cent to 50 per cent. The leg also has a shortening of one-half inch. There are two long permanent scars on the right leg. A big operation, with prolonged convalescence, involving an open reduction, many weeks in a cast and many weeks on crutches, has been proposed, which, if successful, would cut the rotational disability in the right leg in half.

The jury also had before it evidence of minor injuries, abrasions, etc., not discussed here. Mrs. Goldman was in good health before the accident and led an active life. In the four years from injury to time of trial, she had suffered much pain, much restriction in activity and with recurrent dizzy spells and headaches.

The court has carefully considered the claims of the defendant. The verdict is not against the law, it is not against the evidence. The size of the verdict does not shock the sense of justice, or compel the conclusion that the jury were influenced by partiality, prejudice, mistake or corruption. The verdict should not be disturbed. *Sheiman* v. *Sheiman,* 143 Conn. 222, 223.

The motion to set aside the verdict is denied.